UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN THOMAS GARCIA,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

CASE NO. C16-5999-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff Steven Garcia proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1962.[1] He has a limited education and previously worked as

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

ORDER
PAGE - 1

a construction worker and wood box maker.  (AR 27-28, 41, 55-56.)

Plaintiff filed an SSI application on October 28, 2013, alleging disability beginning June 15, 2011. (AR 164.)   His application was denied at the initial level and on reconsideration.

On March 25, 2015, ALJ James Sherry held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 34-62.)  At hearing, plaintiff amended his alleged onset date to the October 28, 2013 application date.  (AR 38.)  On May 12, 2015, the ALJ issued a decision finding plaintiff not disabled.  (AR 16-29.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on October 4, 2016 (AR 4-8), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the application date.   At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe plaintiff's lumbar degenerative disc disease/stenosis, hypertension, obesity, migraine headaches, antisocial personality disorder, and post-traumatic stress disorder.   Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform medium work with the following limitations:  lift no more than twenty-five pounds occasionally and twenty pounds frequently; stand/walk and sit for approximately six hours out of an eight-hour workday; no climbing ladders, ropes or scaffolds; occasionally climb ramps and stairs and stoop; and avoid concentrated exposure to extreme cold, excessive vibration, and hazards, such as moving machinery and unprotected heights.  The ALJ also found plaintiff able to understand and remember simple and detailed job instructions and perform simple, routine repetitive tasks and well-learned detailed tasks; maintain attention and concentration for two-hour intervals to complete tasks without more than the normally expected brief interruptions; have brief and superficial interaction with the public and co-workers; and have superficial interaction with supervisors.  With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a housekeeper, small products assembler, and production assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ mischaracterized an MRI and relied on medical opinions predating that MRI evidence. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>MRI and Medical Opinion Evidence</u>

Plaintiff avers error in the ALJ's consideration of a lumbar spine MRI performed on May 29, 2014. (*See* AR 297-99.) The ALJ described this MRI as showing "moderate canal stenosis and neural foraminal narrowing." (AR 18 (citing AR 297-99, 456-57, 482).) Plaintiff avers this description mischaracterizes the evidence given that the MRI findings included, *inter alia*, "severe bilateral neural foraminal stenosis" at the L2-L3 level and, at the L3-L4 level, "moderate to severe bilateral facet arthropathy", "moderate to severe central stenosis", "severe right neural foraminal stenosis", and "moderate to severe left neural foraminal stenosis." (AR 298.) Also, one of six impressions included in the description of the results included the presence of "[m]ultilevel degenerative sequela" with "abnormal marrow signal surrounding degenerative Schmorl's nodes at T12, L1, and L3" and that "[t]hese suspected reactive Schmorl's nodes could account for significant focal discomfort in the lumbar region." (*Id.*)

Plaintiff maintains the ALJ's characterization of the MRI significantly undermines the severity of the objective findings and that the ALJ erred in failing to explain why those findings were not significant, probative evidence relevant to the assessment of the RFC. *See Vincent v.*

*Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (while ALJ need not discuss each piece of evidence in the record, ALJ "must explain why 'significant probative evidence has been rejected.'") (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  Plaintiff further denies any of the physician opinions cited by the ALJ in support of the RFC assessment can controvert this significant probative evidence given that all of the opinions predate the MRI.  (*See* AR 71-73 (January 2014 opinion from non-examining State agency physician Dr. Robert Bernardez-Fu), AR 85-87 (April 2014 opinion from non-examining State agency physician Dr. Robert Hander), AR 251-55 (examining physician Dr. Gary Gaffield), AR 288-96 (February 2014 opinion of examining physician Dr. Dennis Kim); and AR 25-27 (discussing opinion evidence).)

The Court, however, agrees with the Commissioner that the ALJ did not err in his consideration of the May 2014 MRI.  While not outlining all of the detailed findings and impressions contained in the MRI report, the ALJ cited to and utilized the summary of the results provided by Dr. Mary Jo Ludwig on June 10, 2014:  "5/29 lumbar MRI with moderate canal stenosis & neural foraminal narrowing."  (AR 482; *see also* citation to AR 482 at AR 18).)  Indeed, the ALJ's description appears to have been taken verbatim from Dr. Ludwig's summary.  (AR 18 ("moderate canal stenosis and neural foraminal narrowing."))  Plaintiff, in reply, correctly notes that Dr. Ludwig also includes the six MRI impressions in the June 2014 treatment note.  (*See* AR 483.)  It remains, however, that Dr. Ludwig summarized the MRI results as reflected in the ALJ's decision.

The mere fact the ALJ did not outline the six impressions or MRI findings at each disc level does not mean he failed to consider significant probative evidence.  There is, in fact, no indication the ALJ rejected this evidence and was, as a result, required to provide any explanation for that rejection.  *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (ALJ "may not reject

'significant probative evidence' without explanation.") (quoting *Vincent*, 739 F.2d at 1395). The ALJ's decision shows he considered both the MRI and Dr. Ludwig's consideration of the MRI.

Nor does plaintiff demonstrate error in the RFC assessed. Plaintiff asserts the RFC assessment failed to "set out limitations consistent with the MRI evidence[.]" (Dkt. 9 at 5.) Yet, there were no functional limitations set forth in the MRI or in any medical opinion or record interpreting the MRI results to support greater functional limitations than included in the RFC. The ALJ, moreover, expressly took into account the fact that the record contained evidence subsequent to the physicians' opinions and found that evidence to show plaintiff was more limited in his postural activities than opined by Drs. Hander, Bernardez-Fu, and Gaffield. (*See* AR 25-26.)

The ALJ's decision also otherwise reflects his proper consideration of the evidence associated with plaintiff's back pain. As plaintiff observes, Dr. Ludwig, upon consideration of the May 2014 MRI, referred plaintiff to an orthopedic surgeon for consultation regarding treatment options. (AR 483.) The ALJ, at step two, noted plaintiff has been treated conservatively with non-steroidal anti-inflammatory medication, physical therapy, and injections. (AR 18.) At step four, the ALJ repeated the observation regarding conservative treatment, described numerous treatment notes as not reflecting complaints consistent with the severity alleged at hearing, and stated: "Although the claimant reported being very anxious about the idea of spine surgery, there is no evidence that surgery was recommended. Rather, treatment notes reflect that the claimant was referred to an orthopedic surgeon for consultation regarding treatment options." (AR 23 (citing, *inter alia*, AR 482-83).) As found by the ALJ, there is no indication in the records dated between the May 2014 MRI and the ALJ's May 2015 decision reflecting plaintiff had surgery or anything other than the conservative treatment described in the decision. (*See* AR 37 (in the March 2015

hearing, plaintiff's counsel confirmed the record was complete and that the "ongoing care in the [last] 30 days he's had two cortisone injections. . . .   But that's it."))

Finally, while assessing an RFC for less than the full-range of medium work, the ALJ provided for greater limitations in plaintiff's functioning by identifying only light duty jobs at step five.  (*See* AR 28, 56-58.)   Plaintiff, for this reason and for the reasons stated above, does not establish that the ALJ failed to properly consider or account for the May 2014 MRI.

**<u>CONCLUSION</u>**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>7th</u> day of June, 2017.

Mary Alice Theiler
United States Magistrate Judge